UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

USM HOLDINGS, INC.,

       Plaintiff / Counter-defendant,

                                 Case No.  15-14251

v.                               HON.  GEORGE CARAM STEEH

BRIAN A. SIMON,

          Defendant / Counterclaimant,
and

MARK J. ROLL, ERIC A. SIMON,
DIANE M. DECRAENE, PAUL J. SIMON,
JOSEPH A. SIMON, JR., GEORGE A.
SIMON, II, SUSAN SIMON, JOANNE
MORRISON, PENNY SUPPES, KEVIN
SIMON, MARIANNE SHOCK,
CHRISTOPHER M. SIMON, WILLIAM F.
BLAKE, JUSTIN A. SIMON, ASHLEY
SIMON, CAROLYN A. EGLE, DEBRA A.
DEFOUR, CATHERINE S. SMITH,
CHRISTINE A. GRAHAM, RENEE A.
SIMON, RAYMOND R. DECRAENE, JR.,
NATALIE M. SIMON, ALLISON A. SIMON,
and T. KELLY SIMON,

          Defendants,
and

BRIAN A. SIMON,

          Third-Party Plaintiff,
v.

WYNNCHURCH CAPITAL PARTNERS

III, L.P., and U.S. MANUFACTURING CORP.,

      Third-Party Defendants

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT (DOC. 45) AND DISMISSING THE CASE

This securities fraud action arises out of plaintiff USM Holdings Inc.'s purchase of U.S. Manufacturing Company (USM) in 2014.  Buyer sued former officers, directors, and shareholders of USM for alleged federal and state securities violations, common-law fraud and misrepresentation, and breach of contract.  Plaintiff's original complaint was filed on December 4, 2015.  (Doc. 1).  Defendants' filed a motion to dismiss, (Doc. 16), which was granted in part and denied in part, (Doc. 32).  The Court dismissed Counts I-XI but allowed Counts XII-XVI to proceed.  The Court further granted plaintiff an opportunity to amend its complaint.

Plaintiff filed an Amended Complaint on September 19, 2016.  (Doc. 35).  Most of the allegations in the Amended Complaint concern defendants Brian Simon and Mark Roll, the former CEO and CFO, respectively.  The Amended Complaint divides the remaining defendants into several groups: the pre-sale Voting Shareholders, the pre-sale Non-Voting Shareholders, the pre-sale directors of USM (the Simon Directors), and the Sellers

(comprised of the pre-sale Voting and Non-Voting Shareholders).  Brian Simon, but not Roll, is a member of the Voting Shareholders, the Simon Directors, and the Sellers.  Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 45).  The Court held oral argument on June 12, 2017.  For the reasons stated below, defendants' motion is GRANTED.  The Court shall dismiss Counts I-XI with prejudice and dismiss Counts XII-IVI without prejudice.

## I. Background

USM is an automotive manufacturer specializing in "drive line components and assemblies, including highly specialized axle housings." (Doc. 35 at PageID 1699).  In late 2013, Sellers began marketing USM for sale.  (Doc. 35 at PageID 1703).  Sellers provided plaintiff with information about USM's finances, capital, and customer relationships.  (Doc. 35 at PageID 1703).  In May 2014, plaintiff agreed to purchase USM for $270 million. (Doc. 35 at PageID 1706).

The sale agreement was memorialized in an Agreement and Plan of Merger (Merger Agreement), signed by plaintiff, the Voting Shareholders (including Simon), and two representatives for the Non-Voting Shareholders on May 23, 2014. (Doc. 35 at PageID 1706).  The Merger

Agreement was amended on June 27, 2014.  (Doc. 35 at PageID 1711).

The Merger Agreement contains a number of representations and

warranties concerning USM.  When the sale closed on June 27, 2014,

Simon and Roll executed a Closing Certificate, which certifies that "[t]he

representations and warranties . . . contained in the [Merger] Agreement

are true and correct in all material respects on and as of the Closing Date."

(Doc. 35 at PageID 1716).  Simon and Roll remained in their positions as

CEO and CFO, respectively, for several months following the closing. They

were eventually terminated.  This termination is the subject of several of

Brian Simon's counterclaims.

Plaintiff claims that after the closing, it discovered that it had been the

victim of a "brazen fraud." (Doc. 35 at PageID 1679).  Specifically, plaintiff

alleges that the Merger Agreement contained various misrepresentations

and misleading omissions, and that Simon and Roll made additional

misrepresentations and omissions during the due-diligence phase of the

sale. The specifics will be set forth in detail in the discussion below, but, in

brief, the alleged misrepresentations and omissions involve three general

subjects: (1) the state of USM's manufacturing capital expenditures, (2)

USM's relationship with its second largest customer, Dana Holding

Corporation (Dana), and (3) USM's relationship with its largest customer,

American Axle & Manufacturing (AAM).  Plaintiff claims that as a result of the alleged misrepresentations and omissions, it overpaid for USM by tens of millions of dollars. (Doc. 35 at PageID 1679).

## II. Legal Standard

### A. Fed. R. Civ. P. 12(b)(6)

A court confronted with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).  "[N]aked assertions devoid of further factual enhancement" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint need not contain "detailed" factual allegations, but its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

### B. Fed. R. Civ. P. 9(b)

For a claim involving fraud, it is not sufficient for a plaintiff to plead general facts that render the claim plausible.  Rather, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This means that a plaintiff must "allege the time, place, and content of the alleged misrepresentations [or omissions] on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)) (internal quotation marks omitted); *see also Republic Bank & Trust Co. v. Bear Stearns & Co. Inc.*, 683 F.3d 239, 255-56 (6th Cir. 2012).

## C. PSLRA

In addition to Rule 9(b), the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4, imposes heightened pleading requirements on a plaintiff alleging a violation of the Securities Exchange Act.  Under the PSLRA, a plaintiff alleging federal securities fraud must "specify [1] each statement alleged to have been misleading, [2] the reason or reasons why the statement is misleading, and [3] if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-

4(b)(1).  Furthermore, "the complaint shall . . . state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind."  *Id.* § 78u- 4(b)(2) (emphasis added).  Under the "strong inference" standard, "a court must compare th[e] inference [of scienter] with other competing possibilities, allowing the complaint to go forward 'only if a reasonable person *would* deem the inference of scienter cogent and *at least as compelling as any opposing inference* one could draw from the facts alleged.'" *In re Omnicare, Inc. Sec. Litig.* (*Omnicare I*), 769 F.3d 455, 473 (6th Cir. 2014) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007)) (citations omitted) (emphases added).

### III. Analysis

### A. Consideration of Documents Not Attached to the Complaint

Prior to addressing the substantive arguments in defendant's Motion to Dismiss the Amended Complaint, the Court must decide whether the Conway Report may be considered.  The Conway Report is a document prepared by Conway MacKenzie, Inc. consulting firm.  Plaintiff commissioned Conway MacKenzie to prepare this report as it considered whether to purchase USM.  The Conway Report was not attached to plaintiff's complaint.  Defendants attached the document to their Motion to

Dismiss the Amended Complaint.  (Doc. 45-2).  Plaintiff opposes the Court's consideration of the Conway Report.

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)) (abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

Plaintiff refers to the Conway Report in the Amended Complaint as an example of how Brian Simon misrepresented USM's capacity and operational issues.  (Doc. 25 at PageID 1763).  The Conway Report is also central to arguments regarding plaintiff's reliance on defendants' alleged misrepresentations and/or omissions.  As such, the Court will consider the Conway Report.

**B. Count I – Section 10(b) of the Securities Exchange Act**

Count I alleges securities fraud under Section 10(b) of the Securities and Exchange Act and SEC Rule 10b-5. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Plaintiff alleges that "Brian Simon and Roll made a series of material misrepresentations and omissions to [plaintiff] on behalf of or acting for USM." (Doc. 35 at PageID 1785). These misrepresentations and omissions involve information about (1) the state of USM's manufacturing capital, (2) USM's relationship with Dana, and (3) USM's relationship with AAM.

The heightened pleading standards of both Rule 9(b) and the PSLRA apply to a section 10(b) claim. A "plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

## 1. Relevant Elements of a Section 10(b) / Rule 10b-5 Claim

### a. Material Misrepresentation or Omission

The first element of a section 10(b) or Rule 10b-5 claim is "a material misrepresentation or omission by the defendant." *Id.* at 157. The PSLRA's

heighted pleading requirements apply to this element.  A plaintiff must allege "(1) that a defendant made a statement or omission that was false or misleading; and (2) that this statement or omission concerned a material fact."  *Omnicare I*, 769 F.3d at 470.

A misrepresentation is "an affirmative statement that is false or misleading based on facts held by the defendant when the statement was made."  *In re Yuma Brands, Inc. Securities Litigation*, 73 F. Supp. 3d 846, 859 (W.D. Ky. 2014).  Claiming that a statement is untrue is insufficient.  A complaint must specify each false or misleading statement, the reasons why it is false or misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint must state with particularity all facts on which that belief is formed. 15 U.S.C.A. § 78u-4(b)(1).

The Sixth Circuit has divided misrepresentations into two categories: those that concern "hard information" and those that concern "soft information." *Omnicare I*, 769 F.3d at 470. "Hard information 'is typically historical or other factual information that is objectively verifiable.'" *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401-02 (6th Cir. 1997) (quoting *Garcia v. Cordova*, 930 F.2d 826, 830 (10th Cir. 1991)). Soft information "includes predictions and matters of opinion." *Sofamor Danek*, 123 F.3d at

401; *see also Helwig v. Vencor, Inc.*, 251 F.3d 540, 559 (6th Cir. 2001), *overruled on unrelated grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ("This type of information is defined only by its uncertainty: predictions, matters of opinion, and asset appraisals have all been regarded in this Circuit as 'soft.'"). Misrepresentations can concern either type of information, but misrepresentations that concern soft information must satisfy a heightened scienter requirement: knowledge, rather than mere recklessness. *Omnicare I*, 769 F.3d at 470. This heightened scienter requirement will be explained in the following section.

The Supreme Court recently held that statements of opinion (one form of soft information) are generally not actionable. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund* (*Omnicare II*), 135 S. Ct. 1318, 1326 (2015). An opinion *is* actionable, however, if the person stating the opinion does not "actually hold[] the stated belief" or if the opinion contains a materially false "embedded statement[] of fact." *Id.* at 1326-27. An opinion statement may also become actionable if it is paired with a sufficiently material omission. An opinion statement does not become actionable merely because the speaker "knows, but fails to disclose, some fact cutting the other way." *Id.* at 1329. But if the speaker "omits material facts about the . . . inquiry into or knowledge concerning

[the] statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself," then that omission is actionable. *Id.*

The PSLRA's "safe harbor" for "forward-looking" statements also renders certain misrepresentations not actionable. 15 U.S.C. § 78u-5(c). A forward-looking statement is not actionable if (1) the statement was "identified as a forward-looking statement, and [was] accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially" or (2) was not made "with actual knowledge . . . that the statement was false or misleading." *Id.* § 78u-5(c)(1). Some examples of forward-looking statements are projections, predictions, and statements of plans or objectives. *See id.* § 78u-5(i)(1).

Omissions are actionable only if the defendant had a duty to disclose the omitted information. *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 569 (6th Cir. 2004) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)). One situation in which a duty to disclose arises is when there has been "an inaccurate, incomplete or misleading prior disclosure." *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (quoting *In re Digital Island Sec. Litig.*, 357 F.3d 322, 329 n.10 (3d Cir. 2004)) (internal quotation marks omitted). Generally speaking,

there is no duty to disclose soft information unless it is "virtually as certain as hard fact." *Helwig*, 251 F.3d at 559 (quoting *Sofamor Danek*, 123 F.3d at 402) (internal quotation marks omitted); *see also Omnicare I*, 769 F.3d at 471.

A representation or omission must not only be false or misleading, but it must also concern a "material" fact. Materiality is evaluated at the time of the transaction. *Michaels v. Michaels,* 767 F.2d 1185, 1195 (7th Cir.1985) (stating that for the purposes of § 10(b) and Rule 10b-5, the "materiality of the information misstated or withheld is determined in light of what the defendant knew at the time the plaintiff committed himself to sell the stock, in this case by signing the agreement to sell…"); *see also Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 181 (2d Cir. 2001). "Misrepresented or omitted facts are material only if [there is a substantial likelihood that] a *reasonable* investor *would* have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.'" *Sofamor Danek*, 123 F.3d at 400 (quoting *Basic*, 485 U.S. at 232) (emphases added). Vague statements and "statements that are 'mere puffing' or 'corporate optimism'" are immaterial, because a reasonable investor would not rely upon them. *Ford Motor Co.*

*Sec. Litig.*, 381 F.3d at 570 (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)).

### b. Scienter

Pursuant to the PSLRA, to establish scienter, a plaintiff must state, with particularity, facts that, in the aggregate, give rise to a strong inference that the defendant acted with the required mental state. 15 U.S.C. § 78u-4(b)(2)(A). The defendant must have made misrepresentations or omissions with recklessness at least. *Omnicare I*, 769 F.3d at 472. Such "recklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable [person] would have known of it." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 550 (6th Cir. 1999) (*en banc*) (quoting *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)) (internal quotation marks omitted) (first alteration in original). Although proof of recklessness is ordinarily sufficient to satisfy the scienter element, a plaintiff must prove a higher level of scienter if a plaintiff accuses a defendant of misrepresenting or omitting *soft* information or if the misrepresentation or omission was forward-looking. In these situations, the plaintiff must "plead facts showing that the defendant[] *knowingly* misrepresented or omitted facts[,] to

deceive, manipulate, or defraud . . . ." *Omnicare I*, 769 F.3d at 472 (emphasis added).

Under the "strong inference" standard, "a court must compare th[e] inference [of scienter] with other competing possibilities, allowing the complaint to go forward 'only if a reasonable person *would* deem the inference of scienter cogent and *at least as compelling as any opposing inference* one could draw from the facts alleged.'" *Omnicare I*, 769 F.3d at 473 (quoting *Tellabs*, 551 U.S. at 322- 24) (citations omitted) (emphases added).

### c. Reliance / Transaction Causation

Reliance, also referred to as transaction causation, analyzes the connection between a defendant's misrepresentation and a plaintiff's injury. A plaintiff typically demonstrates reliance by showing an awareness of the defendant's statement and, based on the misrepresentation, plaintiff engaged in a relevant transaction. *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 461 (2013). A plaintiff's reliance must be reasonable or justifiable. *See id.* at 469. A defendant may defeat a showing of reliance by illustrating that a plaintiff had knowledge of the material facts that the defendant allegedly failed to disclose.

### d. Loss Causation

A plaintiff establishes loss causation by pleading facts that tend to show a "causal connection between the material misrepresentation [or omission] and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Loss causation "has been likened to proximate cause in tort law." *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 920 (6th Cir. 2007) (citing *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 213 (2d Cir. 2000)). A plaintiff cannot establish loss causation if some other intervening cause is responsible for the loss. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011).

Courts are split on whether a heightened pleading standard applies to the element of loss causation. Defendants ask the Court to apply the Rule 9(b) standard, arguing that within this split, more courts apply the Rule 9(b) standard. Plaintiff asks the Court to apply the Rule 8 standard, citing *Dura Pharms.*, for the proposition that a complaint need only allege facts showing a "causal connection between the material misrepresentation and the loss." 544 U.S. at 342. The Court did not select an applicable standard in its prior opinion, but instead dismissed the claim after finding that it did not even meet the requirements of Rule 8.

## 2. Application

### a. Alleged Misrepresentations and/or Omissions Concerning USM's Finances

Defendants argue that plaintiff failed to adequately plead materiality and scienter for the misrepresentations and/or omissions related to USM's financial statements. Defendants refer to these misrepresentations and/or omissions as the GAAP Theory. Plaintiff responds that, although it brings contract claims based on misstatements and errors in USM's financial statements, it is not bringing a securities fraud claim based on the same. Defendants' argument here is, therefore, moot.

### b. Alleged Misrepresentations and/or Omissions Concerning USM's Capital

Plaintiff alleges numerous misrepresentations and/or omissions regarding USM's capital expenditure. Plaintiff relies on defendants alleged statements as well as representations and warranties in the Merger Agreement, including

- § 2.9(g), which states that no USM company "failed to make any material expenditures in connection with the normal maintenance, repair and replacement of the material assets used in connection with the operation of the Business in accordance with its past custom and practice;"
- § 2.12, which states that "the assets owned or leased by" USM "are sufficient in order to conduct the Business[] as presently conducted;" and
- § 2.13, which states that "assets of the USM Companies (a) have been maintained and repaired in the Ordinary Course of Business, and (b) are in such condition and repair, reasonable wear and tear excepted, as is suitable for the purposes for which they are presently used by the USM Companies."

Plaintiff asserts that these misrepresentations and/or omissions distorted USM's capacity to successfully launch three Dana programs (P473, P558, and VN127), USM's ability to complete existing business in line with industry standards, and capacity issues at the Mexico and Warren plants. Plaintiff pleads that, as a result, it was forced it to spend tens of millions of dollars to purchase new machines, repair existing machines, replace capacity on an emergency basis, and pay extraordinary amounts of overtime in order to meet USM's customer demands.

Defendants group the alleged misrepresentations and/or omissions into three categories. The Upkeep Theory concerns the condition and efficiency of USM's capital equipment. The Forecast Theory concerns the capital expenditure budget for three Dana programs; P473, P558, and VN127. The Failure to Spend Theory concerns capital expenditure defendants allegedly represented that USM would spend between April 1, 2014 and closing. The Court addresses each category below.

### i. Upkeep Theory

The Upkeep Theory concerns alleged misrepresentations and/or omissions about the sufficiency of USM's equipment. At issue are statements about the quality and run time of USM's machinery. First, plaintiff alleges that defendants repaired USM's machines by re-purposing

old parts from the company's "boneyard" of old equipment. (Doc. 35 at PageID 1760). Defendants assert that this practice was USM's regular custom and practice, and therefore, does not constitute a misrepresentation. The Court agrees. The representations and warranties in the Merger Agreement do not guarantee that all of USM's equipment is new or in perfect order. They merely assert that are in a condition suitable for their present use and are sufficient to conduct present business.

Plaintiff generally alleges that it incurred significant costs to purchase and repair certain machines because the old, over-used, and rebuilt equipment could not function at rates that would enable USM to meet the ongoing demands. (Doc. 35 at Page ID 1774). It specifically identifies only a single piece of equipment that was allegedly in disrepair; the Rockford machine. (*Id.*). Plaintiff lists six other types of machines it purportedly purchased. (*Id.*). But plaintiff does not plead specifics regarding the equipment these new machines replaced. It is not clear whether that equipment was unsuitable for USM's use at the time of the sale or insufficient to conduct USM's then existing business such that it violated defendants' representations. Plaintiff additionally fails to plead with particularity any facts showing that Simon and Roll made reckless or knowing misrepresentations and/or omissions concerning the quality of USM's

machinery. Plaintiff has not pleaded facts showing that defendants knew or should have known that the Rockford, or any other machine, was in disrepair, or that their general statements in the Merger Agreement were false in light of the machines' condition.

Second, plaintiff alleges that USM ran its machines at excessive rates. Defendants respond that information about USM's machine operation rates was available to plaintiff before closing. Defendants point to the Conway Report, which recaps "due diligence procedures. . . designed to focus on the objectives identified by" plaintiff, including "operational metrics and the current state of . . . capacity utilization" as well as "overall plan functions and systems and the capabilities of the operations team." (Doc. 45-2 at PageID 2919). Defendants assert that, following this due diligence, plaintiff was aware of USM's run rates.

Plaintiff has failed to plead securities fraud based upon the run rates. These run rates appeared to be normal for USM prior to the sale and USM often ran at high rates in order to keep up with business. As such, plaintiff has not shown that defendants knowingly misrepresented USM's equipment's ability to conduct business in the manner in which it was executed before the sale. In addition to failures in pleading misrepresentation and scienter, plaintiff did not establish transaction

causation. The due diligence investigation described in the Conway Report reveals that plaintiff was aware of USM's overtime run rates prior to the sale. With this knowledge, plaintiff cannot establish that any of the alleged misrepresentations on this issue caused its injury.

### ii. Forecast Theory

The Amended Complaint recounts a discrepancy between a draft capital expenditure budget, that defendants alleged shared with plaintiff, stating that necessary equipment and tooling for the P473, P558, and VN 127 programs would cost about $8,500,000, and an internal capital summary, that plaintiff did not see before the closing, stating that the same items would cost about $20,500,000.  Plaintiff alleges that defendants purposefully concealed a $12 million discrepancy, leaving plaintiff to cover these costs after closing.

Again, plaintiff fails to state a claim for securities fraud. Plaintiff's allegations regarding misrepresentations and/or omissions are insufficient. Plaintiff does not provide specific information about the capital expenditure figures it complains of here. It is not clear what specific commitments to spend are represented in these figures.  Further, it is not clear that these figures represent guaranteed spending as opposed to mere idealizations.

The Court also questions how much money plaintiff actually spent as a result of the allegedly concealed $12 million discrepancy. Plaintiff's spending impacts a materiality assessment. While plaintiff alleges a series of problems and pairs some with a dollar figure, the Court cannot find that plaintiff specifically stated each false or misleading statement and/or omission, the reasons why it is false or misleading, and that there is a significant likelihood that a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information made available. Furthermore, plaintiff has failed to plead reliance. In discussing "capital expenditures," the Conway Report states that USM "Management has an extensive 'wish list' from which to build future capital plans. Review and consolidation occur; final plan reviewed and approved by the BOD. During the course of executing an annual plan, non-critical CapEx projects often end up being de-prioritized as running the business takes priority." (Doc. 45-2 at PageID 2949). This language precludes reasonable reliance on the alleged misrepresentations regarding capital expenditure budgets.

### iii. Failure to Spend Theory

Finally, plaintiff alleges that, between April 1, 2014 and the closing, defendants intentionally committed less than half of the $10.8 million that

they promised to spend on necessary capital expenditures between April 1 and June 27, 2014.  Plaintiff further asserts that defendants deferred other capital purchases until just before the closing so that plaintiff would be obligated to bear the expenses.

Defendants argue that these statements, made in USM's budgets, are not guarantees to spend, and therefore, are not misrepresentations. Defendants further argue that the Capital Expenditure Budget for April 1st through June 27, 20114, (Doc. 36-1 at PageID 2464) lists approximately $2.6 million in "spending on capital from April 11 through May 20th, 2014," approximately $2.1 million in "capital payments expected to be made prior to June 27, 2014," and approximately $6 million in "existing capital commitments or commitments expected to be made prior to June 27, 2014." (*Id.*).

These forward-looking statements are soft information.  As such, plaintiff "must plead facts showing that the defendants knowingly misrepresented or omitted facts to deceive, manipulate, or defraud." *Omnicare I*, 769 F.3d at 472.  Plaintiff has failed to meet this burden. It does not plead specific facts illustrating that Brian Simon and Roll knew that USM had guaranteed to spend these figures, failed to do so, and knowingly concealed this from plaintiff.

### c. Alleged Misrepresentations and/or Omissions Concerning Dana

Dana represented over 38% of USM's sales and was its second largest customer in 2013. Plaintiff alleges that USM's relationship with Dana was a central focus during pre-sale due diligence. Brian Simon was questioned about this relationship and claimed that there were no developments or issues. (Doc. 35 at PageID 1724-25). Brian Simon and Roll also provided written representations about Dana, including that USM had not breached any contract with Dana, and that Dana had not expressed any intention to alter the parties' relationship. (Doc. 35 at PageID 1747; Doc. 35-2 at PageID 1855-57). Defendants classify these misrepresentations and/or omissions into two categories; the relationship theory and the material dispute theory. Plaintiff asserts that the Dana fraud should not be separated into two separate claims, but rather viewed as a single claim of fraud. (Doc. 633-2 at PageID 4522).

Plaintiff argues that these representations were false. Brian Simon breached a contract with Dana for components for the P473 and VN127 programs in Spring 2014. Plaintiff alleges that Dana was enraged. (Doc. 35 at PageID 11751-52). Dana purportedly made it clear to Brian Simon that it considered his conduct to constitute a breach for which it intended to

hold USM financially responsible.  (Doc. 35 at PageID 1751).  Dana further threatened that this conduct would impact its willingness to award USM future projects.  (Doc. 35 at PageID 1752).  Dana thereafter demanded repayment of $428,396.71 in charges caused by the breach.  (Doc. 35 at PageID 1755).

Defendants argue that plaintiff's alleged misrepresentations about USM and Dana are immaterial because the $428,396.71 figure is not critical to a reasonable investor and plaintiff does not plead any other significant losses.  Plaintiff argues that materiality is not based on a strict numerical threshold, and that Dana's repayment demand does not reflect the impact of the breach.  Plaintiff claims that the deterioration of USM's relationship with its second largest customer, and its threats to withhold future business, is something that a reasonable investor would have found critical.

Customer size is important to the Court's materiality assessment. USM bears a greater risk of harm if a larger customer withholds its business.  The greater the harm, the greater the odds that a reasonable investor would find that the misrepresentation significant.  The Amended Complaint pleads losses of $428,396.71 and Dana's reluctance "to award USM new business or replacement business."  (Doc. 35 at PageID 1756).

Plaintiff specifically mentions the loss of the Jeep Wrangler JL line, but does not enumerate any other lost business.  (*Id.*).  These pleadings are insufficient.  Years have passed since Dana purportedly threatened to withhold business, but plaintiff does not plead any other losses to suggest that its fears were realized.  There is no evidence that Dana withdrew any of its existing business from USM nor failed to award USM any other new business because of the alleged misrepresentations and/or omissions.  As a matter of law, there is not a substantial likelihood that a reasonable investor would have viewed the $428,396.71 payment and the loss of the Jeep Wrangler JL line as significantly altering the mix of information available.  The Court, therefore, cannot find that these misrepresentations and/or omissions are material.

Furthermore, plaintiff has not pleaded facts sufficient to establish that, at the time of the alleged misrepresentations and/or omissions, defendants knew Dana's threats would harm USM through the loss of existing or future business.  In fact, except for the loss of the Jeep Wrangler JL line, plaintiff does not plead that such consequences ever occurred.  The Court, therefore, finds that plaintiff has failed to plead scienter with particularity.

### d. Alleged Misrepresentations and/or Omissions concerning AAM

AAM accounted for 47% of USM's sales and was its largest customer in 2013. Plaintiff alleges that defendants misrepresented and concealed information about disputes between USM and AAM – including that AAM was seeking roughly $4 million in cost recovery claims – as well as the parties' negotiations for a long-term agreement (LTA).

Like the Dana misrepresentations and/or omissions analyzed above, customer size is important to the Court's materiality assessment regarding the AAM fraud. The Amended Complaint alleges that AAM asserted nearly $4 million in cost recovery claims against USM. (Doc. 35 at PageID 1737). This sum represent roughly 1.48% of the purchase price. Plaintiff does not state whether the parties resolved these claims. The Court, however, is familiar with this issue as pleaded in the original complaint. (Doc. 1). There, plaintiff stated that it settled AAM's cost recovery claims for $1.35 million. (Doc. 1 at 30-31). This sum represent roughly 0.5% of the purchase price. Plaintiff further alleges that deteriorations in the parties' relationship would cause tens of millions of dollars in losses. But plaintiff does not plead specifics. It is not clear what programs, if any, were lost or how much money, if any, was lost. Like the alleged Dana fraud, plaintiff's lack of specificity is particularly troubling in light of the years that have passed since USM's sale. Finally, plaintiff alleges that the parties'

deteriorating relationship led to a less favorable LTA.  But plaintiff again fails to plead specifics.  It alleges a $12 million earnings loss but does not provide sufficient information on how that number was calculated.  Plaintiff also failed to attach the LTA.  The Court, therefore, does not know the terms, duration, pricing, or other relevant matters.  Plaintiff's lack of sufficient specificity precludes the Court from finding that it has met the heightened pleading requirements of the PSLRA.  Additionally, the Court cannot find that there is a substantial likelihood that a reasonable investor would have viewed these alleged misrepresentations and/or omissions as significantly altering the mix of information available.  Plaintiff has, therefore, failed to sufficiently plead material misrepresentations and/or omissions.  This lack of specificity dooms plaintiff's attempt to plead scienter.  Plaintiff has not pleaded that these consequences occurred much less that defendants knew that they would occur.  Plaintiff has, therefore, failed to state a claim in Count I, and it shall be dismissed.

## C. Count II – Violation of Section 20(A) of the Securities Exchange Act

In Count II, Buyer alleges that George Simon, Eric Simon, and Paul Simon are secondarily liable for Brian Simon and Roll's conduct in Count I because they were "controlling persons" under section 20(a) of the Securities Exchange Act.  *See* 15 U.S.C. § 78t(a). In order to make out a

claim under section 20(a), a plaintiff must establish an underlying violation of the Securities Exchange Act and establish that the defendant controlled the violator. *See id.* Plaintiff failed to state a claim in Count I, and therefore, has not established a violation of the Securities Exchange Act. Plaintiff has, therefore, failed to state a claim in Count II and it shall be dismissed.

## D. Count III and IV – Michigan Uniform Securities Act

In Count III, plaintiff alleges that Simon and Roll violated the Michigan Uniform Securities Act (MUSA), Mich. Comp. Laws § 451.2101 *et seq.* The factual basis for Count III is identical to the basis for Count I. The parties agree that "a securities claim under [the MUSA] is nearly identical to the corresponding federal securities fraud claim." *JAC Holding Enters., Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 739 (E.D. Mich. 2014) (quoting *The MJK Family LLC v. Corp. Eagle Mgmt. Servs., Inc.*, No. 09-12613, 2009 WL 4506418, at *4 (E.D. Mich. Nov. 30, 2009)) (internal quotation marks omitted). As such, because the Court ruled that plaintiff failed to state a claim in Count I, the Court finds that plaintiff failed to state a claim in Count III. Count III shall be dismissed.

In Count IV, plaintiff asserts that the Simon Directors and the Voting Shareholders are secondarily liable under the MUSA for Simon and Roll's primary MUSA violations. The MUSA provides for secondary liability for

controlling persons, *see* Mich. Comp. Laws § 451.2509(7)(a), as well as "managing partner[s], executive officer[s], [and] director[s] of a [primary violator]." *Id.* § 451.2509(7)(b). Plaintiff failed to state a claim in Count III regarding a primary violation. Count IV, therefore, also fails to state a claim and shall be dismissed.

## E. Counts V – XI – Common-Law Fraud and Misrepresentation Claims

In Counts V through XI, Plaintiff alleges various forms of common-law fraud; fraudulent inducement (Count V), fraudulent misrepresentation (Count VI), concert of action as to fraud (Count VII), silent fraud (Count VIII), concert of action as to silent fraud (Count IX), negligent misrepresentation (Count X), and innocent misrepresentation (Count XI). Counts V through IX involve claims against Simon and Roll. Counts X and XI are claims against the Simon Directors, the Voting Shareholders, Simon, and Roll. The parties agree that Michigan law governs these claims.

Under doctrine first set forth in *Hart v. Ludwig*, 347 Mich. 559 (1956), an action in tort can arise only out of a "violation of a legal duty separate and distinct from the contractual obligation" of the defendant. *Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 84 (1997); *see also Brock v. Consol. Biomedical Labs.*, 817 F.2d 24 (6th Cir. 1987); *Hart*, 347 Mich. at 565 ("[I]f a relation exists which would give rise to a legal duty

without enforcing the contract promise itself, the tort action will lie, otherwise not." (quoting William Prosser, *Handbook of the Law of Torts* § 33 (1st ed.)) (internal quotation marks omitted)).  Defendants argue that the Hart Doctrine bars Counts V-XI.

Plaintiff argues that the *Hart* doctrine does not apply because the claims rely on duties distinct from contractual obligations, and further states that *Hart* does not apply when the fraud of one party precludes the other party from making an informed decision to enter into a contract.  *Eagle Trim, Inc. v. Eagle-Picher Indus., Inc.,* 205 F. Supp. 2d 746, 753-54 (E.D. Mich. 2002); *JAC Holding*, 997 F. Supp. 2d at 732 (quoting *Hart*, 347 Mich. at 565) ("A fraud action may proceed where that tort action would lie without having recourse to the contract itself.").  Plaintiff asserts that the Amended Complaint pleads with particularity a series of specific pre-contract misrepresentations and omissions that are distinct from the written representations of the Merger Agreement.  Plaintiff filed a document summarizing these alleged misrepresentations and omissions.  (Doc. 49-2). Defendants argue that all of the alleged pre-contract misrepresentations overlap with R&Ws.  (Doc. 50-3).  The Court agrees with defendants.  The alleged violations in Counts V-XI arise out of legal duties that are not

separate or distinct from defendants' contractual obligations. Counts V-XI are, therefore, barred by the *Hart* doctrine and shall be dismissed.

## F. Counts XII – XVI

A district court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Counts XII-XVI, as contract claims arising under Michigan law, address predominately state interests. The Court, therefore, shall decline to exercise supplemental jurisdiction over Counts XII-XVI and dismiss the case. For the same reasons, the Court shall decline to exercise supplemental jurisdiction over the Third Party Complaint, (Doc. 40), as all of its claims arise under Michigan law.

### IV. Conclusion

For the reasons stated above, defendants' Motion to Dismiss is GRANTED.

IT IS HEREBY ORDERED that Counts I-XI of the Amended Complaint are dismissed with prejudice.

IT IS FURTHER ORDERED that Counts XII-XVI of the Amended Complaint are dismissed without prejudice.

IT IS FURTHER ORDERED that the Third Party Complaint is dismissed without prejudice.

Dated:  September 12, 2017

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon
attorneys of record on
September 12, 2017, by electronic and/or
ordinary mail.

s/Marcia Beauchemin
Deputy Clerk